JS 44 (Rev. 12/12)

**PBI**

13-CV-2384

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RACHEL MOORE and MICHAEL MOORE, w/h

**DEFENDANTS**
GRAND VIEW HOSPITAL and MICHAEL CHMIELEWSKI, M.D.

13  2 3 8 4

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas A. Lynam, III; Villari, Lentz & Lynam, LLC
1600 Market Street, Suite 1800
Philadelphia, PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                         *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ |  | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☒ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. 1395dd, et seq.
Brief description of cause:
Medical Malpractice

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

MAY 1 2013

DATE
04/30/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

13    2384

Address of Plaintiff: 439 South 10th Street, Quakerstown, PA 18951

Address of Defendant: 700 Lawn Ave., Sellersville, PA 18960

Place of Accident, Incident or Transaction: Grand View Hospital
*(Use Reverse Side For Additional Space)*
700 Lawn Ave, Sellersville, PA  18960

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
Yes☐  No☒
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒

*RELATED CASE, IF ANY:*
Case Number: N / A        Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒  X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify)  42 U.S.C.S. 1395dd, et seq.

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Thomas A. Lynam, III , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 04/30/2013        _____        83817
                              Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

MAY 1 2013

DATE: 04/30/2013        _____        83817
                              Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| RACHEL MOORE and | : | CIVIL ACTION |
| MICHAEL MOORE, w/h | : | |
| v. | : | |
| GRAND VIEW HOSPITAL, et al. | : | NO. **13   2384** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| | | |
|---|---|---|
| 04/30/2013 | Thomas A. Lynam, III | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1990 | 215-568-9920 | tlynam@vll-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAY  1 2013



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RACHEL MOORE and       :
MICHAEL MOORE, w/h,     :
430 South 10th Street       :
Quakertown, PA 18951     :    CIVIL ACTION
                         :
           Plaintiffs,   :    No. 13-
                         :
      v.             :    **13   2384**
                         :
GRAND VIEW HOSPITAL   :
700 Lawn Avenue        :
Sellersville, PA 18960     :
                         :    **FILED**
      and            :    MAY -1 2013
                         :    MICHAEL E. KUNZ, Clerk
MICHAEL CHMIELEWSKI, M.D. :    By_____ Dep. Clerk
1016 Brayton Court     :
Quakertown, PA 18951,   :
                         :
          Defendants.  :

---

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys, Villari, Lentz & Lynam, LLC, says

by way of Complaint against Defendants, as follows:

## I. PARTIES

1.     Plaintiffs, Rachel Moore ("Mrs. Moore") and Michael Moore ("Mr. Moore"),

wife and husband, are adult individuals, residing at 430 South 10th Street Quakertown,

Pennsylvania 18951.

2.     Defendant, Grand View Hospital, against whom allegations of professional

negligence are hereby made, is a corporation duly organized under and existing by virtue of the

laws of the Commonwealth of Pennsylvania with its principal place of business located at 700

Lawn Avenue, Sellersville, Pennsylvania 18960 that provides medical care to patients through a

network of primary care providers, and multi-specialty satellite facilities offering inpatient and outpatient care to its patients.

3.     At all times material hereto, Defendant, Grand View Hospital, acted or failed to act, by and through its agents, ostensible agents, servants, workmen and/or employees, including, but not limited to, its physicians, nurses and other medical staff, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of said Defendant's pecuniary and other interests.

4.     Defendant, Grand View Hospital, moreover, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants, workmen and/or employees, including, but not limited to, co-Defendants.

5.     Defendant, Grand View Hospital, has an obligation to select and retain only competent physicians; to properly oversee all persons who practice medicine within its walls and are owned and/or affiliated with its physician network; and to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients through a network of primary care providers, and multi-specialty satellite facilities offering inpatient and outpatient care to patients, and failed to do so including, but not limited to, Co-Defendants Hancock and Chmielewski.

6.     Defendant, Michael Chmielewski, M.D. ("Defendant Chmielewski"), against whom allegations of professional negligence are hereby made, is an adult individual, *sui juris*, and a resident and citizen of the Commonwealth of Pennsylvania who resides therein at 1016 Brayton Court, Pennsylvania, 18951.

7.     At all times material hereto, Defendant Chmielewski, was a licensed physician engaged in the practice of Obstetrics and Gynecology at Defendant Grand View Hospital, and practicing physician at Stoneridge.

8.     At all times material hereto, Defendant Chmielewski was one of Mrs. Moore's treating, ordering and attending physicians, during her August 15 and 17, 2012 emergency room admissions at Grand View Hospital.

9.     At all times material hereto, Defendant Chmielewski was acting individually and as an agent, ostensible agent, servant, work person and/or employee of Defendant Grand View Hospital, acting within the scope of his authority and/or employment, for and on the business of said Defendant, and under its control or right of control.

10.    At all times material hereto, Defendant Chmielewski acted and/or failed to act, by and through his agents, ostensible agents, servants, workmen and/or employees, including, but not limited to, office and other medical staff under his supervision, who were then and there acting within the scope of their authority in the course of their relationship with Defendant Grand View Hospital, in furtherance of said Defendant's pecuniary and other interests.

11.    For the purpose of this Complaint, the agents, ostensible agents, servants, work persons, and/or employees of Defendants as to whom negligence is being alleged is limited to the following discrete classes of individuals who names are either illegible in the medical records or could not otherwise be ascertained in advance of discovery:

(a)     All physicians, residents, interns, physician assistants, nurses, aides, orderlies, technicians, medical students and/or attendants who provided medical care to Plaintiff, Mrs. Moore, during her August 15 and 17, 2012 admissions to Defendant Grand View Hospital.

## II. JURISDICTION

12.     This Honorable Court has jurisdiction over this matter pursuant to the Emergency Medical Treatment Act and Active Labor Act, 42 U.S.C. § 1395dd, *et seq.*

13.     This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III. FACTS

14.     Mrs. Moore was 29 years of age and had not previously borne offspring when she was first seen at Stoneridge on January 6, 2012 by Mary Pagan, M.D., who confirmed a 7-week viable intrauterine pregnancy.

15.     Mrs. Moore, weighed 221 pounds and measured 5 feet 4 inches in height, consistent with a body mass index ("BMI") of 37.3; she submitted to an early glucose challenge test, yielding a result of 117 mg/dL, within the normal range.

16.     On January 16, 2012, she presented to Lane Moskoff, M.D. at Stoneridge, complaining of persistent, light vaginal bleeding.

17.     Her blood pressure was elevated to 140/72 at that visit.

18.     Dr. Moskoff again confirmed a viable pregnancy and recommended pelvic rest.

19.     On February 8, 2012, Mrs. Moore underwent an obstetrical ultrasound, which measured a crown-rump length of 56.5 mm, consistent with a 12-week gestation.

20.     Based on the above measurement, Nicholas Lindberg, M.D., confirmed that the expected date of confinement ("EDC") was August 23, 2012.

21.     On February 17, 2012, Mrs. Moore presented to Kimberly G. Smith, M.D., who recorded that there was no further vaginal bleeding, and the fetal heart rate was 150 bpm.

22.     A complete obstetrical ultrasound (Level II) examination with anatomic survey was performed on April 9, 2012, revealing that baby girl Moore's anatomy was normal, but her estimated fetal weight ("EFW") was greater than the 97th percentile for 20 4/7 weeks' gestation

23.     This information was shared with Defendant Chmielewski, attending obstetrician that day.

24.     On June 12, 2012, Mrs. Moore submitted to a repeat 1-hour glucose challenge, revealing a blood sugar of 126 mg/dL (normal: <130).

25.     Stephen Kupersmith, M.D. examined Mrs. Moore on August 8, 2012, at 37 6/7 weeks' gestation; she weighed 242 pounds, consistent with a BMI of 40.9, representing a 21-pound weight gain since the beginning of pregnancy.

26.     At this visit, Dr. Kupersmith recorded an estimated fetal weight of 8 g [*sic*] and noted that, per ultrasound performed earlier that day, the baby's EFW was at the 85.7th percentile.

27.     Other than reporting the vertex as posterior, the sonographer, Karen Fluck, made no comment on fetal wellbeing or amniotic fluid volume.

28.     In his note, Dr. Kupersmith recommended induction of labor when the cervix is ripe; however, he did not examine the cervix.

29.     Additionally, there was no report of dipstick urine for sugar or protein at that visit, although three of the last six samples were trace positive for protein.

30.     On August 15, 2012, Mrs. Moore presented to Keren Hancock, D.O. for her next and last prenatal visit at 38 6/7 weeks' gestation.

31.     The baby was viable at 38 6/7 weeks.

32.    Dr. Hancock recorded that Mrs. Moore's weight was up another two pounds over the past week, and her blood pressure had risen to 140/82.

33.    Most significant were the urine dipstick results:  glucose was 4+ and the protein was 2+.

34.    On pelvic exam, Dr. Hancock found the cervix to be closed but 25% effaced.

35.    There was no comment on the fetal station, cervical position, or consistency, nor was there mention of fetal movement.

36.    According to her note, Dr. Hancock sent Mrs. Moore to Labor and Delivery for "UA, blood glucose check, NST and serial BPs.  Preelcamptic panel if indicated after monitoring on L&D."

37.    Mrs. Moore arrived at Defendant Grand View Hospital at 11:45 a.m. on August 15, 2012; the initial blood pressure reading at 11:56 a.m. was 135/88 mmHG.

38.    A mid stream urine sample taken at 12:00 p.m. revealed trace protein and greater than or equal to 1,000 mg/dL of glucose.

39.    Additionally, there was trace ketonuria, positive nitrate, consistent with the finding of bacteria, and 6-10 WBC/high power field.

40.    Mrs. Moore's blood glucose at 12:24 p.m. was elevated to 162 mg/dL.

41.    Although Kimberly G. Smith, M.D., was listed as the attending obstetrician at the time of this visit, she made no entries in the record that day.

42.    The medical records reflect that Defendant Chmielewski was in fact Mrs. Moore's attending obstetrician on August 15, 2012.

43.    Debbie Collins, R.N. noted in the Detail Notes Log at 11:58 a.m., that Mrs. Moore had +2 pitting edema of both legs.

44.     Inexplicably, despite the significantly elevated blood glucose value of 162 mg/dL, swelling and +2 edema, in addition elevated blood pressure (140/82), and urine dipstick results (glucose 4+ and protein 2+) that day -- Defendant Chmielewski did not screen Mrs. Moore for preeclampsia.

45.     Preeclampsia could have been confirmed with either the finding of 300 mg of protein in a 24-urine specimen, or an equivalent value extrapolated over a shorter period of time (12 hours).

46.     No screening was conducted, however.

47.     At bare minimum, Defendant Chmielewski should have ordered a simple urinary protein:creatine ratio to screen for preeclamspia, but failed to do so.

48.     Further, Defendant Chmielewski did not order Mrs. Moore's blood sugar to be rechecked, notwithstanding the significantly elevated value of 162 mg/dL.

49.     Nor is there any record that Mrs. Moore's blood sugar was rechecked at all that day.

50.     Mrs. Moore was placed on electronic fetal monitoring ("EFM") at approximately 11:55 a.m. and monitored until 3:28 p.m.

51.     According to the records, Defendant Chmielewski reviewed the fetal monitor tracing at 2:33 p.m.

52.     At 2:48 p.m. in the Detail Notes Log, Nurse Collins recorded Defendant Chmielewski's interpretation of the fetal heart rate ("FHR") strip as manifesting minimal variability, absent accelerations, and late decelerations -- consistent with Category II fetal status.

53.     Contractions at that time were described as "Irritability Pattern."

54.    At 3:07 p.m., Jayne Clemens, R.N., recorded minimal variability of the FHR and that there were no accelerations.

55.    Mrs. Moore was "OK'd for discharge" by Defendant Chmielewski at 3:23 p.m., after he "reviewed fetal monitor tracing from the surveillance screen."

56.    Mrs. Moore was discharged at 3:30 p.m.

57.    The Triage Report, initiated by Nurse Collins upon Mrs. Moore' arrival, was updated by Nurse Clemens at discharge at 3:30 p.m.; Nurse Clemens recorded that the FHR evaluation was normal, with moderate variability, accelerations present and decelerations absent.

58.    The "Disposition Comments" section of the Triage Report was blank, and the document was not signed.

59.    Mrs. Moore returned to Defendant Grand View Hospital on August 17, 2012 at 6:45 p.m., reporting that she had been contracting every 2-3 minutes since 2:00 p.m. that day.

60.    On initial evaluation, no fetal heart tones were heard.

61.    A bedside ultrasound examination confirmed the absence of fetal cardiac activity, consistent with intrauterine fetal demise, which, with medical probability, occurred on or about August 17, 2012, as reflected by the fact that there was no report of reduced fetal motion or description of fetal skin desquamation, which usually begins approximately six hours after fetal death, suggesting the recent demise of baby Rosalie Moore;

62.    On pelvic examination, Dr. Hancock found the cervix to be 2 cm dilated and 80% effaced with the head at –2 station.

63.    Mrs. Moore's blood pressure on arrival was at 153/114; repeatedly elevated blood pressures were recorded, including a reading of 139/111 at 11:01 p.m.

64.    Her blood pressures returned to a normal range after initiation of an epidural anesthetic at shortly after 11:00 p.m.

65.    Upon artificial rupturing of the membranes at 9:28 p.m., thick meconium was found.

66.    Pitocin augmentation of labor was initiated; Dr. Hancock delivered an 8 pound, 8 ounce, still born but otherwise normal appearing female infant at 1:24 p.m. on August 18, 2012.

67.    An extensive battery of laboratory tests was performed, which ruled out thrombophilias, antiphospholipid antibodies, fetomaternal hemorrhage, and an infectious etiology for the baby's intrauterine demise -- leaving preeclampsia as the presumptive cause of death.

68.    Urinalysis on August 18, 2012 again revealed proteinuria (greater than or equal to 300 mg/dL) and ketonuria (greater than or equal to 80 mg/dL).

69.    There is no record that Mrs. Moore's blood sugar was rechecked after the significantly elevated value on August 15, 2012.

70.    Preeclampsia is a medical emergency to a fetus.

71.    Preeclampsia can lead to death of a fetus.

72.    The treatment for preeclampsia at term is delivery.

73.    Mrs. Moore had preeclampsia on August 15, 2012.

74.    She was sent to the hospital for screening, yet it was not done, and the baby died as a result.

75.    The Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, *et seq.*, requires hospitals to provide certain types of medical care to individuals who present in

need of emergency treatment, regardless of insured status or ability to pay for services. The statutorily required medical treatment, includes, in part:

(a)     appropriate medical screening; and

(b)     stabilization of emergency medical conditions.

76.     At all times material hereto, Defendant Grand View Hospital adopted and utilized an extensive emergency room screening protocol, consisting of initial "evaluation", further "evaluation & treatment", followed by "re-evaluation & decision making" prior to "admission or discharge". *See* http://www.gvh.org/Main/EmergencyDepartment.aspx.

77.     At all times material hereto, Defendant Grand View Hospital expressly took pride in providing comprehensive maternal-fetal medicine evaluation, "including preeclampsia". *See* http://www.gvh.org/Main/MaternalFetalMedicine.aspx.

78.     At all times material hereto, Defendant Grand View Hospital advertised to the general public that it provides maternal-fetal medicine patients with "peace of mind knowing they are in extremely capable hands should the unexpected occur." *See* http://www.gvh100.org/?popup=maternitypediatrics-video.

79.     Had Defendants screened Mrs. Moore for preeclampsia on August 15, 2012, she would have already delivered by the time she otherwise suffered an intrauterine fetal demise.

80.     Had Defendants stabilized the known and documented, nonreassuring FHR pattern, gestational hypertension, and carbohydrate intolerance -- in lieu of discharging Mrs. Moore on August 15, 2012 -- she would have already delivered by the time she otherwise suffered an intrauterine fetal demise.

81.     Had Defendants pursued further maternal-fetal testing on August 15, 2012, or used induction of labor on either August 15 or August 16, 2012, to manage this term pregnancy

complicated by a nonreassuring FHR pattern, gestational hypertension, carbohydrate intolerance, preeclampsia, and gestation diabetes mellitus, Mrs. Moore would have been in the hospital, under observation, and already delivered by the time she otherwise suffered an intrauterine fetal demise.

### COUNT I - MEDICAL NEGLIGENCE
### RACHEL AND MICHAEL MOORE, w/h  v. DEFENDANTS
### GRAND VIEW HOSPITAL AND MICHAEL CHMIELEWSKI, M.D.

82.     Plaintiffs hereby incorporate the averments contained in paragraphs 1 through 81, *supra*, as though fully set forth herein at length.

83.     Defendant Grand View Hospital is vicariously liable for negligent acts and omissions of Defendant Chmielewski, its agent.

84.     The negligence, carelessness and/or recklessness of Dr. Hancock consists of, *inter alia*, the following:

   a.     Failure to screen for preeclampsia on August 15, 2012, where:  (i) Mrs. Moore's elevated blood pressure that morning met the criteria for a diagnosis of gestational hypertension; (ii) the finding of trace proteinuria at triage that afternoon did not rule out a diagnosis of preeclampsia; (iii) preeclampsia could have been confirmed with either a 24-urine specimen or an equivalent value, extrapolated over a shorter period of time (12 hours); and (iv) as another alternative, Defendant Chmielewski could have screened for preeclampsia by ordering a simple urinary protein:creatine ratio.

   b.     Failure to diagnose preeclampsia on August 15, 2012;

   c.     Failure to induce labor on August 15, 2012 or August 16, 2012, where treatment for preeclampsia at term is delivery;

d.      Failure to induce labor on August 15, 2012 or August 16, 2012, which would have prevented the intrauterine fetal demise, which, with medical probability, occurred on or about August 17, 2012, as reflected by the fact that there was no report of reduced fetal motion or description of fetal skin desquamation, which usually begins approximately six hours after fetal death, suggesting the recent demise of baby Rosalie Moore;

e.      Failure to pursue a diagnosis of gestational diabetes mellitus ("GDM"), where, on August 15, 2012, it was apparent that Mrs. Moore was carbohydrate (glucose) intolerant, as evidenced repeatedly by:  (i) a finding of 4+ glucosuria on the office dipstick that morning; (ii) a finding of at least 1,000 mg/dL of glucose in a second urine specimen on admission to Grand View Hospital at noon that day; and (iii) further confirmation by a blood glucose of 162 mg/dL at 12:24 p.m. on August 15, 2012;

f.      Failure to administer a one-hour glucose challenge test on August 15, 2012, as no preparation for that test is required, and where:  (i) the repeat one-hour glucose challenge test result of 126 mg/dL at 29 5/7 weeks' gestation was close to the American Diabetes Association threshold of 130 mg/dL, a value with 90% sensitivity for GDM; and (ii) screening on August 15, 2012 would most likely have been positive, as glucose intolerance typically increases with advancing pregnancy due to increasing insulin resistance;

g.      Failure to administer a three-hour oral glucose tolerance test on the morning of August 16, 2012 following an overnight fast;

h.      Failure to render appropriate obstetric treatment, where assuming the diagnosis of GDM had been confirmed, with Mrs. Moore's metabolic control undocumented, appropriate management would have been delivery;

    i.  Failure to diagnose Mrs. Moore with, and treat her for, GDM in accordance with the safe practice guidelines of the American College of Obstetricians and Gynecologists ("ACOG");

    j.  Failure to proceed with further fetal testing on August 15, 2012, including but not limited to, an amniotic fluid index with contraction stress test, a biophysical profile, or a modified biophysical profile, where the FHR strip was nonreassuring, Category II, and manifested minimal variability, no accelerations and the presence of late decelerations, and further manifested three additional mild, but repetitive, variable decelerations between 3:08 and 3:12 p.m. -- just 20 minutes prior to her discharge;

    k.  Failure to proceed with further fetal testing or delivery pursuant to the safe practice guidelines of the ACOG; and

    l.  Failure to pursue further maternal-fetal testing or induction of labor to manage this term pregnancy complicated by gestational hypertension, carbohydrate intolerance, preeclampsia, and GDM, which would have kept Mrs. Moore in the hospital, under observation, and already delivered by the time she otherwise suffered an intrauterine fetal demise.

  85.  Said acts and/or omissions by the Defendants created a reasonably foreseeable risk of the kind of injuries which were suffered by Mrs. Moore.

  86.  The aforesaid injuries were due solely to the negligence and/or carelessness of Defendants, acting as aforesaid, and was due in no manner whatsoever to any act or failure to act on the part of Mrs. Moore.

  87.  As a result of Defendants' negligence and carelessness, Mrs. Moore has suffered injuries which are or may be serious and permanent in nature, including but not limited to:  fetal demise; still birth of a dead but normal appearing baby girl; lost opportunity for cure; extended

recovery; loss of consortium; incapacity; immobility; profound emotional distress; profound

physical and mental pain and suffering; depression; humiliation; fear of demise; inability to fall

asleep; interrupted sleep and sleeplessness; as well as other injuries as may be diagnosed by Mrs.

Moore's health care providers, all of which injuries have in the past, and may in the future, cause

Plaintiff great pain and suffering.

88.     As a further result of Defendants' negligence and carelessness, Mrs. Moore has

been or will be required to receive and undergo medical attention and care and to expend various

sums of money and to incur various expenses and may be required to continue to expend such

sums or incur such expenditures for an indefinite time in the future and is entitled to

reimbursement of said expenditures.

89.     As a further result of Defendants' negligence and carelessness, Mrs. Moore has

suffered medically determinable physical and/or mental impairment which prevents her from

performing all or substantially all of the material acts and duties which constituted Mrs. Moore's

usual and customary activities prior to the incident.

90.     As a further result of Defendants' negligence and carelessness, Mrs. Moore has or

may hereafter incur other financial losses which do or may exceed amounts which she may

otherwise be entitled to recover including, but not limited to, lost wages and excess medical

expenses.

91.     As a further result of Defendants' negligence and carelessness, Mrs. Moore has

suffered severe physical pain, suffering, permanent scarring, mental anguish and humiliation,

and may continue to suffer same for an indefinite time in the future.

92.     As a further result of Defendants' negligence and carelessness, Mrs. Moore

suffered a loss of earnings and earning potential as a direct result of the aforementioned injuries

that were sustained as a direct result of the negligence and carelessness of the Defendants.

WHEREFORE, Plaintiffs demand punitive, compensatory and special damages together

with pre and post judgment interest.  Plaintiffs hereby certify pursuant to Local Civil Rule 53.2 §

3(c)(2) that the value of Plaintiffs' claim is in excess of $150,000.00 exclusive of interest and

costs.

**COUNT II - WRONGFUL DEATH**
**RACHEL AND MICHAEL MOORE, w/h  v. ALL DEFENDANTS**

93.     Plaintiffs hereby incorporate by reference the averments contained in paragraphs

1 through 92, *supra*, as though fully set forth herein at length.

94.     Plaintiffs hereby bring a Wrongful Death Action, pursuant to 42 Pa.C.S. § 8301,

on behalf of the following individuals whose names and addresses and relationship to the

decedent are as follows:

    a.      Rachel Moore/ Mother
            430 South 10th Street
            Quakertown, PA 18951

    b.      Michael Moore/ Father
            430 South 10th Street
            Quakertown, PA 18951

95.     As a direct and proximate result of the negligence, carelessness and/or

recklessness of Defendants, as specifically enumerated above and incorporated by reference

herein, acting by and through their duly authorized agents, ostensible agents, servants, work

persons and/or employees, Plaintiffs' decedent, Rosalie Moore, was caused to lose her life.

96.     As a direct and proximate result of the Defendants' actions, as specifically enumerated above and incorporated by reference herein, the lawful beneficiaries were caused to lose, and hereby make claim for, *inter alia*, the pecuniary contributions they could have expected to receive from the decedent; the pecuniary value of the services, society and comfort of the decedent, their natural daughter; the pecuniary value of the fringe and other benefits to the decedent which would have otherwise gone to the benefit of the beneficiaries; and the reasonable and necessary medical, funeral, burial and administration expenses.

WHEREFORE, Plaintiffs demand compensatory and special damages together with pre and post judgment interest.  Plaintiffs hereby certify pursuant to Local Civil Rule 53.2 § 3(c)(2) that the value of Plaintiffs' claim is in excess of $150,000.00 exclusive of interest and costs.

## COUNT III -
## VIOLATION OF EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT
## RACHEL AND MICHAEL MOORE, w/h  v. DEFENDANT GRAND VIEW HOSPITAL

97.     Plaintiffs hereby incorporate by reference the averments contained in paragraphs 1 through 96, *supra*, as though fully set forth herein at length.

98.     The Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et seq.*, requires hospitals to provide "[e]xamination and treatment for emergency medical conditions and women in labor," to wit:  (a) "appropriate medical screening… to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists"; and (b) stabilization of emergency medical conditions.  42 U.S.C. § 1395dd(a)(b).[1]

---

[1] The Act defines "emergency medical condition" as either:

    (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--

99.    At all times material hereto, Defendant Grand View Hospital adopted and utilized an extensive emergency room screening protocol, consisting of initial "evaluation", further "evaluation & treatment", followed by "re-evaluation & decision making" prior to "admission or discharge". *See* http://www.gvh.org/Main/EmergencyDepartment.aspx.

100.    At all times material hereto, Defendant Grand View Hospital expressly prided itself on providing comprehensive maternal-fetal medicine evaluation, "including preeclampsia". *See* http://www.gvh.org/Main/MaternalFetalMedicine.aspx.

101.    Preeclampsia is an emergency medical condition.

102.    Preeclampsia can cause the death of a fetus.

103.    Preeclampsia can cause the death of an expectant woman.

104.    Mrs. Moore had preeclampsia on August 15, 2012.

105.    Mrs. Moore was sent to the hospital for screening, yet it was not done, and baby Rosalie Moore died as a result.

106.    At all times material hereto, Defendant Grand View Hospital was fully capable of providing screening to identify preeclampsia.

---

(i) **placing** the health of the individual (or, with respect to a pregnant woman, **the health of the woman or her unborn child) in serious jeopardy**", or

\*        \*        \*

(B) with respect to a pregnant woman who is having contractions--

(i) that there is inadequate time to effect a safe transfer to another hospital before delivery, or
(ii) that **transfer may pose a threat to the health or safety of the woman or the unborn child**."

§ 1395dd(e)(1) (emphasis added).  "Transfer" is specifically defined under the Act to include "discharge".  § 1395dd(e)(4).

107.   At all times material hereto Defendant Grand View Hospital was fully capable of providing such further medical examination and treatment as may be required to treat/ stabilize preeclampsia.

108.   At all times material hereto, Defendant Grand View Hospital was fully capable of providing such further medical examination and treatment as may be required to treat/ stabilize a nonreassuring FHR pattern, gestational hypertension, and carbohydrate intolerance.

109.   Defendant Grand View Hospital, acting by and through its duly authorized agents, ostensible agents, servants, work persons and/or employees, including but not limited to Defendant Chmielewski, failed to screen Mrs. Moore for preeclampsia on August 15, 2012.

110.   Defendant Grand View Hospital, acting by and through its duly authorized agents, ostensible agents, servants, work persons and/or employees, including but not limited to Defendant Chmielewski, failed to stabilize the known and documented nonreassuring FHR pattern, gestational hypertension, and carbohydrate intolerance of Mrs. Moore on August 15, 2012.

111.   Defendant Grand View Hospital's failure to screen Mrs. Moore on August 15, 2012 unreasonably placed the health of baby Rosalie Moore, and Mrs. Moore, in peril.

112.   Defendant Grand View Hospital's failure to stabilize the known and documented nonreassuring FHR pattern, gestational hypertension, and carbohydrate intolerance of Mrs. Moore, discharging her instead on August 15, 2012, unreasonably placed the health of baby Rosalie Moore, and Mrs. Moore, in peril.

WHEREFORE, Plaintiffs demand judgment against each Defendant for civil monetary penalties in the amount of $50,000 per each EMTALA violation, pursuant to 42 U.S.C. § 1395dd(d), totaling an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with pre and post judgment interest.

**VILLARI, LENTZ & LYNAM, LLC**

Date: 4/30/2013

THOMAS A. LYNAM, III, ESQUIRE
Attorney ID# 83817, tlynam@vll-law.com
LEONARD G. VILLARI, ESQUIRE
Attorney ID# 68844, lgvillari@aol.com
1600 Market Street, Suite 1800
Philadelphia, PA 19103
Phone: (215) 568-1990
Fax: (215) 568-9920
Attorneys for Plaintiffs